UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CIVIL ACTION NO. 69-14,428 |
| VERSUS | JUDGE ROBERT G. JAMES |
| WEST CARROLL PARISH SCHOOL DISTRICT | MAG. JUDGE KAREN L. HAYES |

**RULING**

Pending before the Court are cross-motions for summary judgment filed by the parties. Plaintiff United States of America ("the Government") has filed a Motion for Summary Judgment [Doc. No. 12], in which it urges the Court to find, as a matter of law, that the West Carroll Parish School Board ("West Carroll") has failed to eliminate the vestiges of discrimination under its prior dual school system to the extent practicable .  The Government further contends that the Court should require West Carroll to implement one of the desegregation plans the Government has proposed or, in the alternative, develop and implement an equally effective plan by the start of the 2007-2008 school year.

West Carroll opposes the Government's motion and has filed its own Motion for Summary Judgment [Doc. No. 18].  West Carroll urges the Court to find, as a matter of law, that it has fulfilled its constitutional obligations in the area of student assignment and that it has obtained unitary status.[1]   Trial is currently set for February 26, 2007.

For the following reasons, the Government's motion is GRANTED, and West Carroll's

---

[1] If the Court were to grant West Carroll's Motion for Summary Judgment, West Carroll would continue to operate under a desegregation order in all other areas.

motion is DENIED.

I.   ORIGINAL ORDER, MODIFICATIONS, AND PROCEDURAL HISTORY

On February 10, 1969, the Government filed a complaint against West Carroll, asserting that it was operating a dual school system in violation of the United States Constitution.

On June 5, 1969, this Court (Judge Ben C. Dawkins, Jr., presiding) concluded that West Carroll was operating a discriminatory dual school system and ordered the parties to submit desegregation plans.

On August 1, 1969, Judge Dawkins accepted the plan submitted by West Carroll and issued an order ("1969 Plan") establishing certain student attendance zones designed to remove the vestiges of racial discrimination under the dual school system that had been in place. Under the 1969 Plan, three schools–Fiske Union Elementary School, Goodwill Elementary School, and Forest High School--remained "white" schools. The 1969 Plan was modified in 1970, at the request of the Government, to add more detailed provisions. However, West Carroll's school system has never been reviewed since the Supreme Court's decision in *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1 (1971).

In 1976, the 1969 Plan was modified, at the request of West Carroll, to permit the consolidation of Pioneer Elementary and High Schools at the Pioneer High School site.

On April 29, 1991, the Court again modified the 1969 Plan, at the request of West Carroll, to change attendance zones. At that time, Pioneer became a K-8 school, and students in grades 9-12 who had been assigned to Pioneer were re-assigned to Epps High School.

The 1976 and 1991 modifications were not opposed by the Government.

From 1971 to 2003, the Government took no action in this Court, other than its consent to

entry of the 1976 and 1991 orders.

In 2003, the Government investigated the inter-district transfer of white students from the virtually all-black Eudora, Arkansas school system to West Carroll schools. On August 11, 2003, a Consent Order was entered requiring West Carroll to monitor intra-district and inter-district transfers, to verify students' residences, and to take steps regarding the recruitment and hiring of faculty and professional staff.

On November 29, 2005, the Government filed a Motion for Further Relief, seeking Court intervention for the consolidation of West Carroll schools in order to implement a new student assignment plan.

On January 24, 2006, West Carroll filed a memorandum in opposition to the Motion for Further Relief and further moved the Court for a finding of unitary status in the area of student assignment.

Pursuant to the Court's scheduling order, the pending cross-motions for summary judgment were filed in January 2007, and the case is set for trial on February 26, 2007.

## II.  FACTS

West Carroll Parish is a rural parish located in northeast Louisiana. Geographically, the parish is approximately 35 miles long and 20 miles wide. It is bounded on the west by Morehouse Parish, on the south by Richland Parish, on the east by East Carroll Parish, and on the north by the State of Arkansas.

According to the documentation provided to the Court, the current racial composition of the parish is 79% white, 19% black, and 2% other races. As of the fall 2006, West Carroll's eight schools had the following demographics:

|     |                          | **GRADES** | **STUDENTS** | |
|-----|--------------------------|------------|--------------|-------|
|     |                          |            | **White**    | **Black** |
| (1) | **Epps High School**     | K-12       | 49.6%        | 48.2% |
| (2) | **Fiske Union Elementary** | K-8      | 97.7%        | 0%    |
| (3) | **Forest High School**   | K-12       | 96.6%        | 1.5%  |
| (4) | **Goodwill Elementary**  | K-8        | 99.4%        | 0%    |
| (5) | **Kilbourne High School** | K-12      | 79.8%        | 17.3% |
| (6) | **Pioneer Elementary**   | K-8        | 47.5%        | 49.6% |
| (7) | **Oak Grove Elementary** | K-6        | 68.8%        | 28.4% |
| (8) | **Oak Grove High School** | 7-12      | 79.1%        | 18.9% |

Fiske, Forest, and Goodwill have remained white or virtually all-white schools since 1969. Additionally, two other schools are considered racially identifiable. Pioneer Elementary's 47.5% white student population deviates from the district-wide white racial percentage by 31% and Epps' 49.6% white student population deviates from the district percentage by 29%.

### III. LAW AND ANALYSIS

#### A. Standard of Review for Summary Judgment

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its

existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id*. The moving party cannot satisfy its initial burden simply by setting forth conclusory statements that the nonmoving party has no evidence to prove its case. *Ashe v. Corley*, 992 F.2d 540, 543 (5th Cir. 1993).

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

**B.    District Court's Duty in Desegregation Cases**

When presented with a school desegregation case, a district court is first charged with determining whether or not a school board has maintained or facilitated a dual school system in violation of the Equal Protection Clause of the United States Constitution. U.S. Const., Amend. 14. If the district court finds such a violation, then under *Brown v. Board of Educ. of Topeka, Shawnee County, Kan.*, 347 U.S. 483 (1954), and *Brown v. Board of Educ.*, 349 U.S. 294 (1955), the dual system must be dismantled, and the school board must "take whatever steps might be necessary to convert to a unitary system in which racial discrimination would be eliminated root and branch." *Green v. County Sch. Bd. of New Kent Cty., Va.*, 391 U.S. 430, 437-38 (1968).

Until a desegregation order is dissolved, the district court has a constitutional duty to enforce

the order by scrutinizing all school board actions. *Hull v. Quitman Cty. Bd. of Educ.*, 1 F.3d 1450, 1458 (5th Cir. 1993). "The District Court should address itself to whether the Board had complied in good faith with the desegregation decree since it was entered, and whether the vestiges of past discrimination had been eliminated to the extent practicable." *Board of Educ. of Oklahoma City Public Schs. v. Dowell*, 498 U.S. 237, 249-250 (1991).

Ultimately, the goal of the district court is to return "schools to the control of local authorities at the earliest practicable date." *Freeman v. Pitts*, 503 U.S. 467, 490 (1992). In discharging this duty, the district court considers the Supreme Court's "*Green* factors": (1) faculty and staff assignments; (2) transportation; (3) extra-curricular activities; (4) facilities; (5) student assignments; and (6) curriculum. *Green*, 391 U.S. at 435. The district court may find that a school board has reached partial unitary status on one or more factors. *Freeman*, 503 U.S. at 489. Crucial to any finding of unitary status or partial unitary status is a finding by the district court that the school board has demonstrated "good faith" in the discharge of its obligations to dismantle the vestiges of the segregated dual school system. *Id.* at 491; *Green*, 391 U.S. at 439; *Ross v. Houston Independent School Dist.*, 699 F.2d 218, 225 (5th Cir.1983).

  C.  **Unitary Status**

In this case, West Carroll seeks partial unitary status in the area of student assignments only. West Carroll contends that it has complied with the 1969 Plan and that the Government never appealed that order. West Carroll further contends that its students have consistently maintained standardized test scores in the top one-third of Louisiana school systems and that the racial composition of its schools are the result of the residential living patterns of its population, which have not varied significantly since 1969.

The Government contends that West Carroll's compliance with the 1969 Plan is not enough to meet its obligation to take all actions practicable when five of the eight schools in West Carroll remain racially identifiable and other effective plans of desegregation are available and can be implemented. The Government further points out that the 1969 Plan was entered pre-*Swann* and its directive to "make every effort to achieve . . . actual desegregation." 402 U.S. at 26.

The Court has carefully reviewed the arguments of counsel and the facts presented by the record. This case presents unusual aspects. Certainly, the goals of desegregation would have been better served if the Government had sought modification of the 1969 Plan immediately after *Swann* issued. Additionally, even under *Swann*, neither the Government nor this Court is permitted to require racial balancing for its own sake. Likewise, the Court does not condone or endorse a rigid requirement that all schools in West Carroll necessarily be within 15% of the parish's overall racial composition.

However, contrary to West Carroll's argument, the mere facts that it has technically complied with the 1969 Plan and that its students have admirable test scores are not sufficient to discharge its desegregation duties. *See Ross*, 699 F.2d at 225 ("A school system is not, of course, automatically desegregated when a constitutionally acceptable plan is adopted and implemented, for the remnants of discrimination are not readily eradicated. . . Public school officials have a continuing duty to eliminate the system-wide effects of earlier discrimination and to create a unitary school system untainted by the past. . . . They must demonstrate to the district court overseeing their desegregation efforts that current segregation is in no way the result of [their] past segregative actions.") (internal quotation marks and citations omitted).

While the existence of one-race or virtually one-race schools within a district is not *per se*

prohibited or indicative of discriminatory practices without more evidence, *see Swann*, 402 U.S. at 26, the schools in question in West Carroll were clearly segregated in 1969 and remain segregated today. The school board and the district court must "make every effort to achieve the greatest possible degree of actual desegregation and will thus necessarily be concerned with the elimination of one-race schools." *Id.* "Where racial imbalances in student attendance zones persist within a school district, there is a presumption that in the 'former de jure segregated school district . . . the board's actions caused [the imbalance], and it is the school board's obligation to rebut that presumption." *Hull*, 1 F.3d at 1459 n.4 (quoting *Freeman*, 503 U.S. at 512 n.1).

West Carroll cannot rebut the presumption based on the undisputed facts in this case. West Carroll has relied on the 1969 Plan and has made no effort to desegregate its three all-white schools. Its own superintendent has admitted that the plans for reassignment of students are capable of being implemented, and West Carroll does not seriously dispute that these plans would provide better racial balance. Other evidence shows that white students from the largely black Eudora, Arkansas school district were, until 2003, allowed to attend schools in West Carroll and that extracurricular activities, such as homecoming court elections, have continued to be race-based at one or more schools.[2]

Under all the facts and circumstances in this case, the Court finds that the Government is entitled to summary judgment on its contention that West Carroll has failed to comply with its affirmative duty to desegregate and that modification of the 1969 Plan is feasible, necessary, and practicable. It is the hope of this Court that with modification of the 1969 Plan, unitary status can

---

[2]The Court is aware that West Carroll is not seeking unitary status in the area of extracurricular activities, but considers this information in the context of West Carroll's general efforts to desegregate.

be achieved in the very near future and autonomy can be returned to West Carroll, as the Supreme Court intended.

### IV. CONCLUSION

For the foregoing reasons, West Carroll's Motion for Summary Judgment [Doc. No. 18] is DENIED, and the Government's Motion for Summary Judgment [Doc. No. 12] is GRANTED. The Court finds that Defendant has failed to eliminate, to the extent practicable, the vestiges of discrimination. Trial currently set for February 26, 2007, will proceed on that date in order for the Court to consider an appropriate plan on student assignments.

MONROE, LOUISIANA, this 14th day of February, 2007.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE