**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**MONROE DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CIVIL ACTION NO. 69-14428** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **WEST CARROLL PARISH SCHOOL DISTRICT** | **MAG. JUDGE KAREN L. HAYES** |

**RULING**

Pending before the Court is a Motion for Declaration of Unitary Status ("Motion for Unitary Status") [Doc. No. 68] filed by the West Carroll Parish School Board ("West Carroll"). The United States of America, through the Department of Justice ("DOJ"), filed a Response to the Motion for Declaration of Unitary Status ("Response") [Doc. No. 73].

For the following reasons, the West Carroll's motion is GRANTED, the District is hereby declared UNITARY in all regards, and this case is DISMISSED.

## I. ORIGINAL ORDER, MODIFICATIONS, AND PROCEDURAL HISTORY

On February 10, 1969, the Government filed a complaint against West Carroll, asserting that it was operating a dual school system in violation of the United States Constitution.

On June 5, 1969, this Court (Judge Ben C. Dawkins, Jr., presiding) concluded that West Carroll was operating a discriminatory dual school system and ordered the parties to submit desegregation plans.

On August 1, 1969, Judge Dawkins accepted the plan submitted by West Carroll and issued an order ("1969 Plan") establishing certain student attendance zones designed to remove the vestiges of

racial discrimination under the dual school system that had been in place. Under the 1969 Plan, three schools–Fiske Union Elementary School, Goodwill Elementary School, and Forest High School--remained "white" schools. The 1969 Plan was modified in 1970, at the request of the Government, to add more detailed provisions. However, West Carroll's school system has never been reviewed since the Supreme Court's decision in *Swann v. Charlotte-Mecklenberg Bd. of Educ.*, 402 U.S. 1 (1971).

In 1976, the 1969 Plan was modified, at the request of West Carroll, to permit the consolidation of Pioneer Elementary and High Schools at the Pioneer High School site.

On April 29, 1991, the Court again modified the 1969 Plan, at the request of West Carroll, to change attendance zones. At that time, Pioneer became a K-8 school, and students in grades 9-12 who had been assigned to Pioneer were re-assigned to Epps High School.

The 1976 and 1991 modifications were not opposed by the Government.

From 1971 to 2003, the Government took no action in this Court, other than its consent to entry of the 1976 and 1991 orders.

In 2003, the Government investigated the inter-district transfer of white students from the virtually all-black Eudora, Arkansas school system to West Carroll schools. On August 11, 2003, a Consent Order was entered requiring West Carroll to monitor intra-district and inter-district transfers, to verify students' residences, and to take steps regarding the recruitment and hiring of faculty and professional staff.

On November 29, 2005, the Government filed a Motion for Further Relief, seeking Court intervention for the consolidation of West Carroll schools in order to implement a new student assignment plan.

On January 24, 2006, West Carroll filed a memorandum in opposition to the Motion for Further

Relief and further moved the Court for a finding of unitary status in the area of student assignment.

Pursuant to the Court's scheduling order, in January, 2007, the parties filed cross-motions for summary judgment, and the case was set for trial on February 26, 2007. However, on February 14, 2007, the Court issued a Ruling [Doc. No. 28] and Judgment [Doc. No. 29] granting the Government's Motion for Summary Judgment and denying the School Board's Motion for Summary Judgment. At that time, the Court found that the School Board failed to eliminate, to the extent practicable, the vestiges of discrimination and, thus, was not entitled to a finding of unitary status in the area of student assignment.

Following the Court's Ruling, Magistrate Judge Hayes held a settlement conference with the parties, during which they reached agreement in principal. The parties then filed a consent judgement and motion. After review, on March 21, 2007, the Court granted the joint motion and entered the Consent Judgment [Doc. No. 31]. Under that Consent Judgment, it was anticipated that if the School Board took certain agreed-upon actions, particularly to implement a new student assignment plan and transfer provisions, for three years, one or both parties would move for unitary status in the area of student assignment.[1] Additionally, the parties agree to work towards resolution of the remaining *Green*

---

[1]The March 21, 2007 Consent Judgment provided for the following:

- Seven-zone student assignment plan from the 1969 plan was replaced by a five-zone student assignment plan, resulting in reassignments and the closure of Fiske Union and Pioneer Elementary Schools;

- Transfer provisions were modified:

    (1) Deadline for advertising the Residency Verification and Transfer Notice was changed from June 1st to May 15th.

    (2) Deadline for submitting a transfer application was changed from July 1st to June 15th.

desegregation factors.

On August 14, 2008, the Court issued Memorandum Order [Doc. No. 33] amending the standing Decree and clarifying reporting requirements. The School Board complied with the reporting requirements.

Between 2008 and 2012, the parties continued to meet, work towards resolution of this case, and participate in regular status conferences with the Court. As a result, on August 15, 2012, the parties submitted another joint motion to approve another consent order [Doc. No. 63]. On August 16, 2012, the Court granted the motion and issued the Consent Order [Doc. No. 64]. The Court found that the School Board had satisfied its desegregation obligations in the areas of faculty assignment, staff assignment, transportation, extracurricular activities, and facilities, declared the District unitary in those areas, and dismissed the permanent injunction and withdrew its jurisdiction over those areas of

---

(3) West Carroll is required to produce all transfer applications and documentation to DOJ by June 22nd.

(4) West Carroll committee has until July 15th to review applications and submit list of proposed transfer to DOJ.

(5) DOJ must object to proposed transfers by July 22nd.

(6) If no DOJ objections, then the transfers are approved.

(7) If there are DOJ objections, West Carroll has until August 1st to respond.

(8) The parties must resolve any disputes by August 10th, or the student is not allowed to transfer.

(9) 2006-2007 school year transfers were grandfathered in for 2007-2008 under certain conditions.

[Doc. No. 31].

operation. The Court's continued limited supervision in the area of student assignment in order to ensure compliance with the terms in the August 16, 2012 Consent Order regarding the closure of Goodwill Elementary ("Goodwill") and the adoption and implementation of revised student discipline policies and related trainings. The Consent Order provided further:

> The parties have agreed and the Court finds that the Board will have met its desegregation obligations in the remaining areas of operation if it implements the Goodwill closure and student discipline provisions of this Consent Order, both as set forth above. Therefore, upon demonstration of successful implementation of such provisions, but no sooner than two semesters after the District adopts and fully implements the new student discipline policy, the Board may move for a declaration of unitary status and final dismissal as to the remaining issue.
>
> The Board retains the burden of eliminating any vestiges of *de jure* segregation which may continue to exist in the area still under this Court's supervision. The parties have agreed and the Court finds that the Board will have met its desegregation obligations in the remaining areas of operation if it implements the Goodwill closure and student discipline provisions of this Consent Order, both as set forth above. Therefore, upon demonstration of successful implementation of such provisions, but no sooner than two semesters after the District adopts and fully implements the new student discipline policy, the Board may move for a declaration of unitary status and final dismissal as to the remaining issue.

[Doc. No. 64, p. 12].

In the ensuring almost three years since the implementation of the August 16, 2012 Consent Order, the parties have continued to work together and to keep the Court apprised of their progress through reports and status conferences.

On March 13, 2015, the School Board filed the instant Motion. [Doc. No. 68]. The DOJ filed its Response [Doc. No. 73]. The Court finds that the School Board need not file a reply memorandum, as the record before it is sufficient for a ruling.

## II. PERTINENT FACTS

The facts in this case have previously been recounted on multiple occasions, and a full recitation

is unnecessary at this time. The Court incorporates by references the historical facts set forth in its February 14, 2007 Ruling [Doc. No. 28].

Since entry of the Court's August 16, 2012 Consent Order, a number of actions have taken place in this case. As of the 2012-2013 school year, the School Board closed Goodwill and reassigned those students to Forest High School. *See* [Doc. No. 65].

Although student discipline is not one of the traditional *Green* areas, the School Board, in conjunction with the DOJ, also took actions to address any racial disparity in the discipline process, as set forth in the Consent Order. It is undisputed that the School Board developed a discipline policy, which has been in place since August, 2013; implemented annual training, which took place in August of 2013 and 2014; and has monitored student discipline data since implementation of the policy.

Pursuant to the Consent Order, the School Board was to adopt and implement a process for monitoring student discipline data at the school level and the District level. At the school level, the principal provides students and/or parents with a handbook and must provide a confirmation of receipt. The principal also ensures that students receive an orientation on the discipline plan each school year. The principals at each school have teams which review the discipline plan and identify and explore ways to improve conduct. The teams report to both the principals and the faculties. At all schools, the administrators regularly visit the classrooms and observe disciplinary methods, and teachers have access to the principal, assistant principal, and the District-level supervisor to discuss disciplinary problems or issues.

On the District level, a computer record of the data from the schools is maintained. The District administration ensures compliance with state and federal laws which require the reporting of discipline data to the Louisiana Department of Education and the United States Office of Civil Rights. A staff

member who reports directly to the Superintendent also oversees the management and implementation of any necessary due process procedures.

## III. LAW AND ANALYSIS

### A. District Court's Duty in Desegregation Cases

When presented with a school desegregation case, a district court is first charged with determining whether or not a school board has maintained or facilitated a dual school system in violation of the Equal Protection Clause of the United States Constitution. U.S. Const., Amend. 14. If the district court finds such a violation, then under *Brown v. Board of Educ. of Topeka, Shawnee County, Kan*., 347 U.S. 483 (1954), and *Brown v. Board of Educ.*, 349 U.S. 294 (1955), the dual system must be dismantled, and the school board must "take whatever steps might be necessary to convert to a unitary system in which racial discrimination would be eliminated root and branch." *Green v. County Sch. Bd. of New Kent Cty., Va.*, 391 U.S. 430, 437-38 (1968).

Until a desegregation order is dissolved, the district court has a constitutional duty to enforce the order by scrutinizing all school board actions. *Hull v. Quitman Cty. Bd. of Educ.*, 1 F.3d 1450, 1458 (5th Cir. 1993). "The District Court should address itself to whether the Board had complied in good faith with the desegregation decree since it was entered, and whether the vestiges of past discrimination had been eliminated to the extent practicable." *Board of Educ. of Oklahoma City Public Schs. v. Dowell*, 498 U.S. 237, 249-250 (1991).

Ultimately, the goal of the district court is to return "schools to the control of local authorities at the earliest practicable date." *Freeman v. Pitts*, 503 U.S. 467, 490 (1992). In discharging this duty, the district court considers the Supreme Court's "*Green* factors": (1) faculty and staff assignments; (2) transportation; (3) extra-curricular activities; (4) facilities; (5) student assignments; and (6) curriculum.

*Green*, 391 U.S. at 435. The district court may find that a school board has reached partial unitary status on one or more factors. *Freeman*, 503 U.S. at 489. Crucial to any finding of unitary status or partial unitary status is a finding by the district court that the school board has demonstrated "good faith" in the discharge of its obligations to dismantle the vestiges of the segregated dual school system. *Id.* at 491; *Green*, 391 U.S. at 439; *Ross v. Houston Independent School Dist.*, 699 F.2d 218, 225 (5th Cir.1983).

**B. Unitary Status**

In this case, West Carroll seeks unitary status in the remaining *Green* area of student assignment and, to the extent necessary, in the area of student discipline. The DOJ admits that West Carroll has closed Goodwill and has implemented a revised disciplinary policy, provided training to staff, and monitored discipline data. Although the DOJ raises a concern about the completeness of the data maintained, the DOJ does not specifically oppose a unitary status finding.

The Court has been actively involved in working with the School Board and the DOJ to resolve this case for over ten years. After having reviewed the record,and with its own knowledge of the actions taken by both parties, the Court finds that the School Board has met the requirements of the original Decree and the two consent orders. Specifically, the Court finds that more than two semesters have passed since the School Board closed Goodwill and implemented, maintained, and monitored a non-discriminatory disciplinary policy. As a result, the School Board has effectively eradicated any vestige of past discrimination and is unitary in the area of student assignment and the additional area of student discipline.

**B. Good Faith**

The Court's findings above with regard to the *Green* factor of student assignment and on the

Board's discipline policy constitute outward signs of the School Board's commitment to its students, employees, the public, and, to this Court, that it has, in good faith, erased all traces of prior discrimination. Having fully reviewed the submission of the School Board, the Court also finds that it has demonstrated its good faith commitment to the entirety of the desegregation plan, so that the students, parents, and public have assurance that further injuries or stigma will not occur.

## III. CONCLUSION

For the foregoing reasons, the School Board's Motion for Unitary Status [Doc. No. 68] is GRANTED. The Court finds that the School Board has achieved complete unitary status as to all areas of operation, the permanent injunction previously entered is DISSOLVED, and this matter is DISMISSED WITH PREJUDICE. The Court will end its direct supervision of this District.

MONROE, LOUISIANA, this 1st day of June, 2015.

Robert G. James

**ROBERT G. JAMES**
**UNITED STATES DISTRICT JUDGE**